I welcome you to the Nassau State Court of Appeals for the 6th Circuit. If you are reserving time, I hope you've told our clerk, so we know how much time you want to reserve, and you may call the first call. Yes, Judge. Case number 23-5538, JRS Partners GP et al. v. Leech Tishman Fuscaldo Lampl LLC. Argument is not to exceed 15 minutes per side. Mr. Thomas, you may proceed for the appellant. Thank you. Good afternoon, Your Honors. May it please the Court, my name is J.D. Thomas. I represent the appellants in this matter. I'd like to reserve three minutes for rebuttal. Certainly. Thank you. Is that better, Your Honor? A little bit. I think that's better. Wonderful. Just speak up. Okay. I will speak up. Your Honors, in preparing for this case, it occurred to me that there are a lot of arguments in the briefs. There are a lot of citations to the record below. And so what I wanted to try to do today with my time is to simplify the case for the Court and focus on three issues that I think will assist the Court in rendering a decision in this matter. Before I do that, I want to just touch briefly on the standard. The standard in front of this Court is the de novo review. We are not here to argue simply because the district court below got something wrong that this should be reversed and remanded. We are here to argue that the allegations of the amended complaint as pled meet the requirements of Rule 8 and Rule 9b and should be allowed to proceed. So with that, let me touch on the three issues that I think that will assist this Court in rendering its decision. Two relate to Leach-Tishman. One relates to Mr. Mankey. The first, as it relates to Leach-Tishman, is the tolling agreement. There is no dispute about the validity of the tolling agreement. It is a valid agreement and Leach-Tishman concedes that. The only dispute is about the interpretation of the agreement. And we would submit that if this Court believes the word any truly does mean any, then the tolling agreement is valid and should be enforced in all of the State law claims against Leach-Tishman can proceed. The language, the operable language in the tolling agreement states that the period of time told shall not be included in determining the applicability of any statute of limitations, latches, or any other defense based on the lapse of time in any action or proceeding brought by either party. The defense that Leach-Tishman has raised is that the period of time, adds to the period of time for the claims that could be brought against Mr. Mankey lapse. And because of that, the claims that the appellants bring against Leach-Tishman are time barred. That is a defense based on the lapse of time. That falls under any defense based on the lapse of time. And that is something that Leach-Tishman agreed to toll under the tolling agreement. We think it's that simple. And if the Court agrees that the tolling agreement is valid and should be enforced, then its analysis can stop as to the State law claims. And all of the State law claims can proceed. Unless the Court has any questions, I'd like to move on to the Yes, it does, Your Honor. Because the tolling agreement was entered into within one year after the first date that any of the appellees argue the plaintiffs could have been aware of a claim. The first date that the appellees argue that a claim could have accrued or begun to accrue is May 23, 2017. The tolling agreement was entered into on September 14, 2017. So within one year of that date. And does it depend on whether the claim sounds in malpractice or sounds in fraudulent misrepresentation, for example? With respect to the claims against Leach-Tishman, it does not, Your Honor. But as to Mankey? As to Mr. Mankey, it does. And that's the third issue that I'll get to. Can I ask a background question? Everybody's been focused on the statute of limitations for malpractice claims, which is one year. If it's not governed by that, does the parties agree that it would be a three-year statute of limitations? Putting aside the tolling agreement, I'm not asking you to give us a tolling agreement question. I'm just talking about background norms here. Everybody's been talking about the one-year statute of limitations for the malpractice claims. If that's not the right statute of limitations, as a default matter, put aside the agreement, what is the statute of limitations? The statute of limitations in Tennessee for a malpractice claim is one year. Right. That is the correct period of time. The statute of limitations for a malpractice claim. If it weren't governed by that, what statute of limitations would it involve? Three years? For the fraud claim, three years. Yes, Your Honor. Okay. If there are no further questions, I'll move on to the second issue as it relates to Leach-Tishman. That is, that's the standard of recklessness under the Exchange Act, Section 10b. This Court is familiar with that standard. It recently issued the City of Taylor decision. It's issued other decisions on that standard. The question is whether or not a complaint pleads multiple obvious red flags, demonstrating an egregious refusal to see the obvious or investigate the doubtful. That's a quote from City of Taylor, quoting P.R. Diamonds v. Chandler. And we submit that the amended complaint does do that. I want to draw the Court's attention to a number of paragraphs in the amended complaint. Paragraphs 54 through 57 set forth allegations about what Mr. Manke set. And paragraphs 90 through 97 set forth allegations about what he knew when he made those statements and what Leach-Tishman knew. And those are the red flags. I want to highlight a couple for the Court. Mr. Manke admitted that neither he nor Leach-Tishman had ever seen the power purchase agreements. Those are important here because those are the agreements by which these supposed funds would make their money. They were the factories of the funds. Without them, the funds could not make any money and could not exist. Mr. Manke went on and admitted further that he did not know he nor Leach-Tishman had ever seen any of the documents that they would normally see in a fund like this. Mr. Manke and Leach-Tishman are alleged to have knowledge of how these funds are created. And he admitted on a phone call that he never saw any of the documents that he would normally see and knew that. Mr. Manke talked about Mr. Warren, who was the perpetrator of this fraud scheme, and described him as, quote, very squirrely, said that it was very difficult for him and Leach-Tishman to get any information out of him that they needed, and that he was reticent to pay his bills. We've seen...  GOTTLIEB How do these arguments go to the PSLRA claim? Or how broadly do you want to make that argument?  BOUTROUS I think those arguments go towards the securities claims, Your Honor. I mean, I think they also would relate to whether or not the statements that were made were negligent or fraudulent misrepresentations as well. But I do want to focus the Court on them for the purposes of the securities fraud claim. MS. If you're someone who's relying on that information, it's upsetting. But when the standard is that it really has to be at an egregious level, what is it about each of those acts that you've just described to us that takes them beyond mere negligence and actually into an egregious act that is a red flag that should have been apparent? GOTTLIEB I think it's the allegations that, about Mr. Manke's sort of basis of knowledge. And that's what the Court needs to look at. He is alleged to be an attorney who is familiar with these types of investments. And he knows what he needs in order to draft the offering documents that were drafted, draft the representation documents that were drafted. And he admits that he does not have it. And we submit that that's egregious. In a case that I would direct the Court to, the appellees focus Isn't that just negligence? Isn't that just falling below the professional standard of care for a lawyer? GOTTLIEB I don't believe it is, Your Honor. I believe that it is actually reckless. And I think if you look at the decision in SEC v. George, this Court says that failing to I'm sorry, Your Honor, that when the defendant failed to witness or receive any documentation confirming that the securities had been traded, and when he failed to verify the legitimacy of the investment programs he advertised, that was recklessness. And we think that that's what occurred here. The hell-wake factors that the appellees focus on are really for companies that are going concerns. Right? That actually exist. This is just a fraud scheme. It never existed. None of these funds were real. Nothing actually happened with them. GOTTLIEB Do you think it would be inappropriate for us to apply the hell-wake factors? GOTTLIEB I don't think it's inappropriate to apply some of the hell-wake factors, Your Honor. But some of the hell-wake factors would be inapplicable to any Ponzi scheme like this where there is no actual company that exists. GOTTLIEB Sure. But even so, we only have one. Right? I know that the hell-wake factors are not, you know, it's not like you have to check every single box. But at most, you're just, your only thing that you're arguing is that you've disregarded factual information. GOTTLIEB I think it's slightly different than that, Your Honor. I think what we're arguing, to draw an analogy to the City of Taylor, the CEO in City of Taylor is alleged to have made representations that the factories were doing great when, in fact, they were shooting on sparks and catching on fire. Here, the allegations are that Mr. Mankey said that everything was fine, not having any idea whether the factories, i.e., the power purchase agreements, even existed. So I think it's actually worse than disregard of current factual information. It's making representations about current factual information when having absolutely no knowledge of what that factual information is. And, Your Honors, briefly, if I can touch on the last point that I wanted to raise with regard to Mr. Mankey and the question of the applicability of the malpractice statute of limitations to the negligent and fraudulent misrepresentation claims. The question there is whether or not a claim can be brought only because the defendant, in this case Mr. Mankey, is acting in his professional capacity. And the claims that are being brought in the amended complaint could be brought against any individual. Any person off the street who had the knowledge or lack of knowledge that Mr. Mankey is alleged to have had and made the representations that he made would be liable for the conduct that he engaged in. It does not matter whether he's an attorney, an accountant, anybody. It could be the CEO, advisor of the fund, anything, and he would have that same liability. That's the question that all of the cases that apply the malpractice statute of limitations look to. Whether or not the claim could only be brought because the person is acting in their professional capacity. I don't know if the Court has any questions on that. If you don't. Well, I'll ask a quick question.  So I hear what you're saying, and I think the case law probably supports that. I guess the question that I have is why in the operative complaint, then, the language that's in there actually talks about his position as an attorney and the fact that he is held to a higher standard. And it doesn't say that only with respect to the negligence claims. It also says that with respect to the fraud claim. Is that just kind of surplus language that's in there? Should we ignore that? Sure, Your Honor. And I see my time has expired, so if you don't mind, I'm going to respond to your question. We are – the complaint can't ignore facts that exist. Mr. Manki admittedly had the opportunity to learn the information that he learned because he was acting as an attorney for the funds. But the complaint also alleges that he and Leach Tishman were acting as promoters of the funds. And it would be – the same thing would be true if Mr. Manki was the CEO or an advisor. The complaint would have to explain how he had the opportunity to have the knowledge or lack of knowledge that he then made representations about that were fraudulent. And you're correct, Your Honor. It does allege that he was an attorney. But if you – And he was held to a higher standard of care. I mean, now you're kind of getting into – Due to a technical issue, this section of audio was not captured. The territory is suggesting that it's legally significant that he's an attorney. I don't think it's legally significant that he's an attorney, other than the fact that as an attorney, he had the opportunity to learn that information. And if you line out the fact that he's an attorney in, I think it's paragraph 176, I want to highlight a couple for the Court. Mr. Manki admitted that neither he nor Leach Tishman had ever seen the power purchase agreements. Those are important here because those are the agreements by which these supposed funds would make their money. They were the factories of the funds. Without them, the funds could not make any money and could not exist. Mr. Manki went on and admitted further that he did not – he nor Leach Tishman had ever seen any of the documents that they would normally see in a fund like this. Mr. Manki and Leach Tishman are alleged to have knowledge of how these funds are created. And he admitted on a phone call that he never saw any of the documents that he would normally see and knew that. Mr. Manki talked about Mr. Warren, who was the perpetrator of this fraud scheme, and described him as, quote, very squirrely, said that it was very difficult for him and Leach Tishman to get any information out of him that they needed, and that he was reticent to pay his bills. We – How do these arguments go to scion to the PSLRA claim? Or how broadly do you want to make that argument? I think those arguments go towards the securities claims, Your Honor. I mean, I think they also would relate to whether or not the statements that were made were negligent or fraudulent misrepresentations as well. But I do want to focus the court on them for the purposes of the securities fraud claim. So what is it about – you go through those, and certainly, if you're someone who's relying on that information, it's upsetting. But when the standard is that it really has to be at an egregious level, what is it about each of those acts that you've just described to us that takes them beyond mere negligence and actually into an egregious act that is a red flag that should have been apparent? I think it's the allegations that – about Mr. Manke's sort of basis of knowledge, and that's what the court needs to look at. He is alleged to be an attorney who is familiar with these types of investments, and he knows what he needs in order to draft the offering documents that were drafted, draft the representation documents that were drafted, and he admits that he does not have it. And we submit that that's egregious. And a case that I would direct the court to, you know, the appellee's focus – Isn't that just negligence? Isn't that just falling below the professional standard of care for a lawyer? I don't believe it is, Your Honor. I believe that it is actually reckless. And I think if you look at the decision in SEC v. George, this court says that failing to – I'm sorry, Your Honor – that when the defendant failed to witness or receive any documentation confirming that the securities had been traded, and when he failed to verify the legitimacy of the investment programs he advertised, that was recklessness. And we think that that's what occurred here. The Hellwig factors that the appellees focus on are really for companies that are going concerns, right, that actually exist. This is just a fraud scheme. It never existed. None of these funds were real. Nothing actually happened with them. So you think it would be inappropriate for us to apply the Hellwig factors? I don't think it's inappropriate to apply some of the Hellwig factors, Your Honor, but some of the Hellwig factors would be inapplicable to any Ponzi scheme like this where there is no actual company that exists. But even so, you only have one, right? I know that the Hellwig factors are not – you know, it's not like you have to check every single box. But at most, you're just – your only thing that you're arguing is that you've disregarded factual information. I think it's slightly different than that, Your Honor. I think what we're arguing – to draw an analogy to City of Taylor, the CEO in City of Taylor is alleged to have made representations that the factories were doing great when, in fact, they were shooting off sparks and catching on fire. Here, the allegations are that Mr. Mankey said that everything was fine, not having any idea whether the factories, i.e., the power purchase agreements, even existed. So I think it's actually worse than disregard of current factual information. It's making representations about current factual information when having absolutely no knowledge of what that factual information is. And, Your Honors, briefly, if I can touch on the last point that I wanted to raise with regard to Mr. Mankey and the question of the applicability of the malpractice statute of limitations to the negligent and fraudulent misrepresentation claims. The question there is whether or not the claim can be brought only because the defendant, in this case Mr. Mankey, is acting in his professional capacity. And the claims that are being brought in the amended complaint could be brought against any individual. Any person off the street who had the knowledge or lack of knowledge that Mr. Mankey is alleged to have had and made the representations that he made would be liable for the conduct that he engaged in. It does not matter whether he's an attorney, an accountant, anybody. It could be the CEO, advisor of the fund, anything, and he would have that same liability. That's the question that all of the cases that apply the malpractice statute of limitations look to, whether or not the claim could only be brought because the person is acting in their professional capacity. I don't know if the Court has any questions on that. If you don't. Well, I'll ask a quick question. Sure. So I hear what you're saying, and I think the case law probably supports that. I guess the question that I have is why in the operative complaint, then, the language that's in there actually talks about his position as an attorney and the fact that he is held to a higher standard, and it doesn't say that only with respect to the negligence claims. It also says it with respect to the fraud claim. Is that just kind of surplus language that's in there? Should we ignore that? Sure, Your Honor, and I see my time has expired, so if you don't mind, I'm going to respond to your question. We are, the complaint can't ignore facts that exist. Mr. Manki admittedly had the opportunity to learn the information that he learned because he was acting as an attorney for the funds, but the complaint also alleges that he and Leach Tishman were acting as promoters of the funds, and it would be, the same thing would be true if Mr. Manki was the CEO or an advisor. The complaint would have to explain how he had the opportunity to have the knowledge, or lack of knowledge, that he then made representations about that were fraudulent. And you're correct, Your Honor, it does allege that he was an attorney. But if you... He was held to a higher standard of care. I mean, now you're kind of getting into territory of suggesting that it's legally significant that he's an attorney. I don't think it's legally significant that he's an attorney, other than the fact that, as an attorney, he had the opportunity to learn that information. And if you line out the fact that he's an attorney in, I think it's paragraph 176 of the fraud claim, the fraud claim still survives. It doesn't matter that he's an attorney, other than for the fact that that's how he learned of the information. He could have been the CEO. He could have been an advisor to Mr. Warren. He could have been in any role and learned of that information. The complaint would have to explain that. It can't ignore that. Thank you, Your Honors. Good afternoon, Your Honors. Charles Michaels on behalf of the appellee, Brett Manky. I'll be using six minutes of the appellee's time to discuss the accrual date and the statute of limitations, which apply to both appellees. But if Manky prevails on those issues, the case against him is dismissed. I want to first go into what was just discussed, that the claim against Manky could be brought against any person off the streets. The complaint specifically states that at all times Manky was acting as an agent of Leach Tishman, that he was acting in his capacity as an attorney. The complaint never states he was acting as an agent of CEA or of Chris Warren. It never states he received any money directly from Chris Warren or CEA. And, in fact, there's a reference in the reply to the motion for judgment on the pleadings, a reply to the response, wherein the appellants previously relied on a forensic review of the payments by CEA and Warren to all sorts of different entities to obtain a preliminary injunction. And it showed, I believe, $54,000 in payments to Leach Tishman and $0 directly to Brett Manky. That's pertinent because there's case law from Ohio, which applies the same statute of limitations for malpractice as Tennessee, which if you're going to allege fraud against an attorney that gets out of the malpractice claim, you have to allege that the attorney received some sort of financial benefit other than attorney's fees or the continued receipt of attorney's fees. There's nothing in the complaint that alleges he received anything other than attorney's fees. Would it make a difference if he were an agent perhaps uncompensated at this time, perhaps be compensated in the future? If he were an agent for CEA or Warren? I think that would make a difference, but I also think you would have to plead that at some point he was an agent for CEA or Warren. I mean, there's the reference to that at one point he sent one email to someone else, and therefore he was a promoter of the funds. But even that doesn't allege that he was aware of the fraud, that he was participating in the fraud, that he was seeking some sort of remuneration for the fraud other than attorney's. Well, so I believe that's where the distinction on that issue comes in. So if the claim does not sound in malpractice, for example, of the fraudulent misrepresentation, isn't the limitations period three years? The limitations period would be three years. And that would make it not barred, wouldn't it? That would make it not barred if the claim didn't sound in malpractice. But again, the appellants would have to get past the initial issue that they haven't actually pled anything that indicates fraud, that Menke knew of the fraud or was participating in it, rather than recklessness. I believe in the case law to get it out of the malpractice issue, it has to be some sort of intentional act where he's actually knowing of the fraud, whereas if it's just recklessness, he's just breaching the professional standard of care. And again, Tennessee case law hasn't gone into this too much, but in Kentucky and in Ohio, there's been case law, for example, that the filing of an illegal lien doesn't take the case out of the malpractice statute of limitations. While appellants in that case, or appellants have argued that that case doesn't reference fraud or anything like that, an illegal lien is under Kentucky Revised Statute 434.155, which pertains to offenses against property by fraud. So the filing of an illegal lien is a fraud claim, but in that case, the statute of limitations was one year because the filing of the lien arose out of the defendant's role as an attorney. Let me understand, why wasn't, if we look at City of Taylor, if we go on into the PSLRA issue, I mean your argument you're raising kind of across the board about what his conduct was, and if you are in the PSLRA claim, the standard isn't it is highly unreasonable conduct, which is an extreme departure from the standards of ordinary care. Why do the actions of Mr. Manky not clearly fit within that statement? That issue actually wasn't appealed as to Brett Manky. It was only appealed as to Leach Titian. Okay, that answers the question. What do you make of the fact that, aside from the fact that the appellants actually charged recklessness, or at least used that terminology in the complaint, they also sought punitive damages, which is something that wouldn't have been available simply for the negligence claim. That would, as I understand it, only be available if it were a fraud claim. Isn't that something that we should pay attention to? It is, but then you would still have to look to the conduct that allegedly constituted the fraud. And again, the case law reference would show that it has to be something more than something that arises out of the representation. I see your light is on. But as I read the complaint, it just alleges that when Manky made the misrepresentation, he knew that the statements were false or acting with recklessness with regard to the misrepresentation. So how doesn't that shift us from malpractice to fraud? I mean, we're just at the complaint. Again, all we can do is look back to the case law, I mean specifically that 2020 case from the Supreme Court of Kentucky, wherein they filed the illegal lien and it got dismissed at the motion to dismiss stage, because the court was able to find that even though it was a fraud claim, it arose out of his duties as an attorney. Good afternoon, Fred State of Nashville Bar. On behalf of Appley, Leach-Tishman, Pascaldo and Lample, the first issue I want to touch upon was the first issue raised by the appellants, and that is the tolling agreement issue. And while it is true that Leach-Tishman did enter into a tolling agreement that was presented to them by the appellants, that the appellants did not have Leach-Tishman's agent, upon whom they try to base their vicarious liability claims, execute the tolling agreement. And in not doing so, they allowed the limitations period to run against Mr. Manke for any claim that had the one-year statute of limitations, period. They allowed that to run before they ever sued Leach-Tishman. And as the district court noted, under the Apsher principles, and this is the Tennessee Supreme Court principles, there are four situations in which a plaintiff can't pursue a vicarious liability claim against the principle, or against solely the principle. That's when the agent is exonerated by finding non-liability. The plaintiff is settled with the agent. The agent is immune from suit by statute or otherwise. And the fourth one, which is the one that applies here by operation of law, when you allow the statute of limitations to run on the agent without suing the principle for vicarious liability, that claim is barred. So are you saying that a party can't contract away those particular provisions or rights? If that's what the contract says. But the contract is between solely Leach-Tishman and the plaintiffs, and it applies only to claims against one or the other. It does not contemplate that the statute is told to a non-signatory to the agreement. Well, it doesn't. I mean, the tolling agreement expressly talks about any defenses that are based upon a lapse of time. And I'm not quoting. I'm giving you a paraphrase there.  So why didn't Leach-Tishman really kind of waive that expressly in the tolling agreement? Because I don't think the language as used waives that claim. In other words, it doesn't waive the appellant's obligation to make sure that when they assert their vicarious liability claim against Leach-Tishman, they've got it buttoned up by not losing it procedurally by having the agent as part of the tolling agreement or suing him timely. What is that, though, if that is not based upon a lapse of time? I mean, it's a defense that Leach-Tishman has based upon the fact that, you know, for vicarious liability, you need to have had the principal actor, I suppose. But this is all based upon a lapse of time and not pursuing the agent. It's another way under Abshure that a principal can allow an agent to be released and, therefore, release a principal. And in this particular case, this is a matter of state common law. And I wanted to point out that this court, when it looks at issues like this, they ask, well, what would the Tennessee Supreme Court say about this? Well, the Tennessee Supreme Court has already weighed in on this and has cited the district court's opinion on the Abshure issue with regard to the tolling agreement as an appropriate illustration of the application of Abshure. There's no tolling agreement in that case at all. So it's not addressing the question that's before us. It just cites the district court case as an illustration. But the question in the Tennessee Supreme Court case is not the question that's before us today. You're asking us to read a lot into an unexplained citation. I suppose I'm asking this court or asking the assumption that the Tennessee Supreme Court understood what it was doing when it reached out to a district court case and cited this as an illustration of the appropriate application of the Abshure principles. And the fact that going to the language of the tolling agreement itself, we cited the two Ohio state court cases in which the very issue was presented. And I think it's the Buckingham Doolittle case. The court recites the tolling agreement at issue. It reads exactly like this one or almost verbatim as this one did. And the court said, well, you didn't have the agent sign it, though. He's not a signatory to it. And so I believe that that court understood. I think what I'm trying to say here is that, yes, you can you can toll your claims against a principle, but it doesn't absolve you from doing what you have to do procedurally, whether by reaching out to the agent to make sure that you preserve your right to pursue that claim. And that's what they didn't do here. That's what happened in the Ohio cases that I cite to. And that's what Judge Richardson found at the district court. So. It maintains the. It maintains the status quo as of that date as between the two parties. It doesn't maintain the status quo as between the plaintiff and the agent with whom they they need to preserve their claim in order to later pursue their claim against us. It only preserves their rights against us as of that day. But the but the limitations period continues to run as as the agent that is not a party to it. So even if. The time, any action or proceeding brought by either party, I understand that's between the two of you. Yes. That action. But it is. But the defense in that action arises from the statute of limitation or latches. And I'm I'm struggling to see that line, which doesn't cover the situation. Because we did not we don't we raise a statute of limitations defense. I mean, we don't raise a statute of limitations defense. What we're saying is you procedurally allowed our agent off the hook by not. They they could have done it by settling with him by an affirmative release. Any number of reasons or any of the four under the Abshore. And it's the same result. The the point under Abshore is that you can't release the agent and the. It doesn't say based upon lapse of time. Between the between the plaintiffs and agents who are not parties to this. And it goes on to say that. Because that's exactly what you're raising. You're saying I have. Issues and that time limits issue is is not that you missed something to me. I'm raising it otherwise. And so you are in fact. As to a party that's asked to an entity or a person that is not a party to this. Our argument is that you. Agreed. As to Mr. Mankey and the agreement goes on to say nothing in this agreement shall be construed as an acknowledgement by any party. That any claim has or has not been barred or is about to be barred by the statute of limitations latches or otherwise. In other words, we're not we're not freezing Mankey's limitations period as to the agent. That's how we read that. I've only got 23 seconds left. Let me skip over to fraudulent misrepresentation because fraudulent. Yes. Not in this context today because of the arguments that my counsel for Mankey has made. Based upon the case law, the way that this is pleaded, this allegations against Mr. Mankey for fraudulent misrepresentation still fall under the one year statute, I believe, according to the case law. And I'll refer back to the brief on that. So but generally speaking, yes, a foundation of recklessness. Against the law. Vicariously. I thought there was I know it's tied up with the tax lawyer issue, but isn't there an allegation that the actions of the law firm constituted recklessness? But I believe that it is that's only with regard directly. It's only with regard to the Securities Act claim. Even with regard to the tax attorneys, it's still vicarious based upon actions of tax attorneys in the firm. So your argument is that anything that anybody did wrong in the firm itself. Even if it was reckless in what they did and reckless for the firm as an entity to have accepted it. The tolling agreement has no impact. So the tolling. Yeah, because the same thing has happened. They know that they discovered that the tax attorneys were involved necessarily at the time that they realized that they were victims of a Ponzi scheme. So they stand in the same shoes as Mr. Mankey, the tax attorneys. Yes, the limitations period has run as to them as well. Even under the they haven't named any of those to this day. I don't think so. The limitations periods run as to all the taxes. Only covers the people in the law firm who did not do something wrong. The tolling agreement is between the plaintiffs and Leach Tishman. And and the attorneys who are alleged to have engaged in reckless misconduct. I'm not sure I understand the question. Because I'm struggling with the signing of a tolling agreement by a firm on behalf of itself as a group of attorneys.  And claim that any attorney in our firm that acted inappropriately is excluded from the tolling agreement that is signed in the capacity of the entire firm. That is correct. I don't understand. Well, but that is that is the law. And in the Ohio cases that we pointed to went through that exact analysis and found that the individual attorneys are not bound by a tolling agreement that is signed by the firm. And I will just refer to those cases. But the court in Ohio went through step by step showing why it wasn't a parent authority. Why there was not. Why the why the law firm couldn't speak for the agent. And I will just defer to that. That's correct. That's right. They are not bound by it. The law firm does not bind them by it by signing the tolling agreement. And we have case law. It's from Ohio, but it's on point. They are not. All right. Yes, I'm out of time. I did want to touch upon that. One sentence. Give us one sentence conclusion. The SEC George case is nothing like ours. That involved a bunch of guys who work for Merrill Lynch and were stockbrokers and promoters and were basically stealing money. Nothing like Mr. Mankey. But that's the case they rely on. Actually, it is. It is absolutely different in this case. All right. How does how does your argument function with the hell with factors? If we are saying very specifically that these are just a non exhaustive list of factors usually relevant to science. This case arises viewing science in a different category from what say a class action of an existing corporate entity that's making SEC filings. We know that is beside the point here because what we have is really kind of garden variety fraud or failure or as alleged negligent misrepresentation or fraudulent misrepresentation. So why does it matter if only one or two or some smaller category of factors are satisfied in this case? If it's the problem of the claim. Well, the gravamen of the claim is that we have an attorney who in Pittsburgh who was provided just some documents by by the fraudster as the attorney who was retained to do work for the company. And he had he had what he needed from these forms to do or to to perform the scope of the work, which is to draw up some offering memoranda based upon this. I'm struggling with that answer because so an attorney who is general counsel for an entity can draw up an offering to the public based on not looking at any of the core documents that would advise counsel that the entity actually exists. And I understand we have to take the complaint as as written as true. I understand. He was not their general counsel, but in that context, it's like the you've got the CFO in the city of Taylor case, which this this panel is familiar with. In that case, you had a CFO who signed off on all the financial documents for the public and everyone else. And the court concluded, yes, he could have done more, but that's that demonstrates negligence at best. It's the same thing here. Mr. Mankey didn't get a financial benefit from this. He wasn't like the the SEC versus George defendants who were clearly involved in the scheme and were taking money for themselves and knew that that they were distributing what wasn't profits, but money from. I don't think that makes a difference. And that in corporate America, it's all right. That is frequently, you know, selling your own stock. All of those things frequently matter. And so the question becomes, what are the factors matter? It is not SEC failures to file the appropriate disclosures, but is in fact more garden variety failure to provide the information or fraudulently misrepresenting it or negligently misrepresenting it. So why doesn't the presence of some of those hell with non-exhaustive list of factors be sufficient to show that it was highly unreasonable conduct to have engaged in a response to a potential investor, finding the validity of the investment? Why that was not unreasonable conduct under the PSLI claim. And, Your Honor, as part of your question, you said, why isn't this fraudulent or negligent misconduct? I agree it could be negligent misconduct, but that doesn't raise the conduct to the high level. And it's a heightened level. Because it's recklessly fraudulent, and the fraudulent claims in this complaint allege reckless activity. But there has to be an inference of fraudulent conduct that's at least as compelling as any opposing inference of non-fraudulent intent. And that's from City of Taylor. In this particular case, you have the plaintiffs in both their complaint and amended complaint admitting in their opening paragraphs what they call the truth, that Mr. Manky had no idea whether or not these were legitimate offerings when he prepared the documents. If recklessness is the standard, is that not sufficient evidence of recklessness to propose to a potential investor the validity of an investment? Recklessness qualifies under this Act. Why is that not recklessness? It is not recklessness that is indicative of fraud. You have to have, it's got to, it can't, at worst, he could have called Mr. Warren and said, hey, I don't like these documents. Tell me what's really going on. You're basically, to find that, you have to say that Mr. Manky is under a duty to get to the bottom of the fraud. And I simply don't believe that the, that under the Securities Act, that is required. This is the quintessential, in retrospect, he could have done more, but there was not enough in front of him for him to say, well, this is clearly fraudulent. I'm not, you know, I'm going to go confront my client over this. In the real world, that just doesn't happen. And to make that sort of conduct, not pressing your client for, you know, to confirm that he's not a fraud every time you get a bunch of documents to work up offering memorandum, is putting, it's going to. You're going into opinion discussing here. Well, maybe, but if we're talking about. Tom is not. Okay. All right. Thank you. Appreciate it. Thank you, Your Honors. Very briefly, I'll try to take that in reverse order. Mr. Manky may not be under a duty to call Mr. Warren and say, is this a fraud? But he's certainly under a duty not to say to the plaintiffs in this case that it's all good if he doesn't have that information. I think Your Honor focused on Helwig correctly and that this is reckless conduct under Helwig, that the Helwig factors are non-exhaustive, and that in a situation where you have garden variety fraud, where nothing existed and nothing existed here, Mr. Warren has another five years in jail, that the Helwig factors may not be exactly on point. I want to touch briefly on the tolling agreement. Counsel for Appellees said that the tolling agreement maintained the status quo as of the date it was signed. The status quo as of the date it was signed was that the appellants could bring claims against both Mr. Manky and Leach Tishman. That was the status quo. It is clear that the defense here falls under any defense based on the passage of time. And then, Your Honor, just skipping briefly up to Mr. Manky, it is not accurate to say that if the claims against Mr. Manky are dismissed, that no claims can be brought against Leach Tishman because of the tolling agreement. I think a counsel for Mr. Manky said that, and I just want to clear that up. Mr. Manky is clearly alleged to have engaged in fraudulent conduct. And there is – let me back up. I'm sorry. I want to touch on another point. He's clearly alleged to have engaged in fraudulent conduct. I think you focused on that with respect to the fraud claims. Those allegations cover both the PSLR claims and the fraud claims themselves. And he's also alleged to have acted as a promoter of the funds, and I think that's key. And you'll find that in paragraph 72, 73, 74, and 109, where the amended complaint alleged that he acted as a promoter. And, again, just drawing the court back to why we're here, we're here on a review of a motion to dismiss. All the allegations need to be read in a light most favorable to the plaintiffs. I think if you read them all in a light most favorable to the plaintiffs, you apply the clear language of the tolling agreement, the plaintiff's claims should survive and should go on. Your Honors, I don't know if you have any questions. I'm happy to respond to them if you do. No, we thank you both. Thank you very much. And the case will be taken under advisement and an opinion issued in due course.